STATE, EX REL., F. A. GARRISON, APPELLANT, VS. THE COUNTY COMMISSIONERS OF PUTNAM COUNTY, APPELLEE.

1. It is improper to set up as a ground of demurrer affirmative matter of fact not appearing in the pleading demurred to.

2. The establishment of a municipality under the general law for the incorporation of cities and towns, on territory over which a part of an existing public road, established by the road authorities of the county, passes, does not of itself abolish the road as a public highway, or revoke or suspend the powers and duties of the county authorities as to it.

3. The failure of a railroad company to perform its duties as to crossing or otherwise using an established public road does not relieve the County Commissioners or other public officials of a county from the performance of their own statutory duties in the premises.

4. Mandamus is the proper remedy to compel officials to perform such duties.

Appeal from the Circuit Court for Putnam county.

The alternative writ represents that on July 6, 1874, the County Commissioners of Putnam county laid out a certain road or highway leading from Palatka south to a point on the St. Johns river, known as Brown's Landing, and such road has been ever since a public road, and known as the Brown's Landing road, and that the relator, well knowing said road and the convenience of access to the town of Palatka which it gave to lands lying along it, and induced largely by such easy means of communication with Palatka afforded by the road to the said land, purchased a tract of land and a farm and orange grove on said road, and improved the same at large expense, and has resided continuously thereon ever since; that shortly after he had made such purchase, the Palatka and Indian River Railroad Company, a corporation of this State, built over and

upon said road, between the land, farm and orange grove of said petitioner and Palatka, the road bed for its railway, and constructed a trestle over part of the same, and wholly blockaded and obstructed the travel over and upon said road, and the relator has been unable ever since to go to and from said Palatka and his house by wagon or other vehicle over said road, but has been obliged, in going and coming to and from Palatka to take a much more circuitous route nearly three times as long, with much steeper grades.

That relator and others immediately upon the building of the road-bed of the railway, applied to the Board of County Commissioners, as then constituted, to have said Brown's Landing road repaired and put in order for public travel, and the railway company at that time promised the County Commissioners and land owners on the road to put the latter in as good condition as it found it, and open the same for public travel, but said railway company has neg-lected and refuses to do so. That subsequently petitioner and various persons living along said Brown's Landing road, have from time to time asked the Commissioners and and railway company to repair the road, but they have neglected to do so.

That on July 2, 1886, petitioner appeared by counsel before the Board of County Commissioners and filed a petition setting forth the facts substantially as above alleged and demanded of them that they cause the road to be repaired and made passable for public travel, and informed them that if they did not do so he would apply to this, the Circuit Court, for relief; and that said board then fearing that petitioner would take the action he now takes, appointed a committee consisting of one of its members, and of the counsel for petitioner, and directed them to investigate the matter and see what action could be taken

with the railway company, and to report their investigations at the next meeting to be held by the board on the first Friday of August, 1886.

That between said second day of July and said first Friday in August, the town of Palatka Heights was incorporated, and within it was included a small portion of said Brown's Landing road, including that portion obstructed by said railway company, and which your petitioner had demanded of said County Commissioners that they should repair.

That on said first Friday in August, a petition of twelve freeholders was presented to said County Commissioners, asking them to relocate the Brown's Landing road where it was obstructed by said railway company, so that the same might be repaired more readily and at less expense to the county, but the said board then and there wholly refused to act upon the petition of relator and that of the freeholders, but referred both petitions and relator to the town of Palatka Heights for redress.

The command of the writ is that the Board of County Commissioners proceed at once to cause said Brown's Landing road to be repaired and rendered fit for the use of the public to travel thereon with carrriages and other vehicles or on foot, or to show cause, (at the time and place stated in the writ,) why they should not do so.

The County Commissioners interposed a demurrer, which we will treat as being to the alternative writ, which is the declaration in a mandamus case. The grounds of this demurrer are as follows:

1st. The right to use and occupy any highway, and to change the course or direction thereof for the purpose of a railroad, is given by section 10, sub-division 5, page 278 of McClellan's Digest, to the railway corporation.

2d. Whenever a railroad corporation has so used author-

ity conferred by the above mentioned statute, it becomes the duty of such corporation to take additional land to construct a new highway in lieu of that so used, and it is made the duty of the Circuit Court to declare such new highway, so located by it, open for the purpose of a public highway, thus ousting the Board of County Commissioners of jurisdiction in the premises and leaving no duty incumbent on them.

3d. That by section 17, page 248, and section 19, page 249, McClellan's Digest, the duty of opening streets is conferred upon the council of municipal corporations; and that the obstruction complained of is within the territorial limits of the town of Palatka Heights, a municipal corporation under the laws of this State.

4th. That in a case of the State vs. The Palatka and Indian River Railroad Company, this question has been already passed upon by this court (Putnam County Circuit Court), and an order made directing the removal of the obstruction by the Sheriff of the county, and such order has been suspended by an appeal to the Supreme Court, and is now pending there.

The Circuit Judge sustained the demurrer and dismissed the writ, and from this order of dismissal an appeal has been taken.

*S. C. Chandler* for Appellant.

*W. H. Wigg* for Appellees.

There was no error in order dismissing petition for mandamus.

For—mandamus only issues when the relator has a clear legal right to the performance of a particular act or duty at the hands of the respondent; and, second, that the law affords no other adequate or specific remedy to secure the

enforcement of the right and performance of the duty which it is sought to coerce. High Ex. Leg. Rem., 2d Ed., Sec. 10.

In this case the prayer is for a writ of mandamus to compel the Board of County Commissioners for Putnam county " to repair " and " render fit for use of the public " the road known as the " Brown's Landing road."

The petition alleges that the obstruction is caused by the " Palatka & Indian River R. R. Co., a corporation of the State of Florida," building " its road-bed upon and over the said road," and constructing " a trestle over part of said road and wholly blockaded and destroyed " same ; and that said portion of road so blockaded and destroyed is within the " limits of the town of Palatka Heights," a municipal corporation in the State of Florida.

By statute the power is given to city and town council to regulate, improve, alter, open and extend streets, to cause encroachments and obstructions to be removed. McC.'s Dig., page 248–249, secs. 17–19 ; High Extra. Leg. Rem., page 292, sec. 413.

This grant excludes the right of the County Commissioners to control any highway in a municipal corporation. 2d Dil. Munic. Cor., sec. 1010 ; Barnes vs. Dist. of Col., 91 U. S., 540 ; 2d Dil. Munic. Cor., secs. 676–677 ; Cowen's Case, 1 Overton (Tenn.), 311 ; Indianapolis vs. Croas, 7 Ind., 9 ; Lafayette vs. Jenners, 10 Ind., 74, 79 ; State vs. Jones, 18 Tex., 874 ; Cross vs. Morristown, 18 N. J. Eq., 305 ; State vs. Morristown, 33 N. J. Law, 57.

Again : If, however, a sufficient remedy exists at law, by which the obstruction may be removed, and the person obstructing the highway indicted, the writ will be denied. High Ex. Leg. Rem., sec. 415.

The remedy in Florida is ample, and the removal of the obstruction already ordered by judgment of Circuit Court

from Putnam county. McC.'s Dig., page 428, sec 8 ; The State vs. P. & In. R. R. Co.—now in appeal in Supreme Court.

The railroad had a right by statute to take the road obstructed for purpose of building its road-bed. McC.'s Dig., page 278, sec. 5.

And when public road is so taken, power is given to railroad corporations to take other land for a highway on a new line, and it is made the *duty* of the Circuit Court to declare such road, so newly located, a public road. McC.'s Dig., page 284, sec. 22.

MR. JUSTICE RANEY delivered the opinion of the court:

I. The fourth ground of the demurrer introduces matter of fact which does not appear upon the face of the alternative writ, and is, therefore, not within the province of a demurrer, and cannot be considered. Gould's Pleading, Ch. 2., sec. 43 ; Ch. 9, sec. 2.

II. The proposition of law urged under the third ground of the demurrer is, that the municipal corporation of Palatka Heights has exclusive jurisdiction of that part of the Brown's Landing road within its territorial limits. If the County Commissioners have been deprived of their jurisdiction over this part of the road by the establishment of this town, they are not subject to the remedy sought against them, and the writ was properly dismissed. Whether they have been so deprived depends upon the legislation bearing upon the subjects of public roads and municipal corporations. 2 Dillon's Mun. Cor., sec. 676. The intention of the Legislature, as manifested by the statutes, must control.

The act of February 16th, 1872, defining the duties of County Commissioners, provides that they shall have power

" to build and keep in repair county buildings, roads and bridges," and " to alter, lay out, establish, maintain, vacate or discontinue any road or highway in their respective counties " * * " to grant licenses for keeping ferries and toll bridges for a term of years not exceeding five, and to prescribe the rate of ferriage and toll." By the act of 1874, chap. 2007, "to establish and keep in good repair the public roads and highways in this State," all the roads and highways in the several counties of this State that have been laid out according to law, or may thereafter be laid out according to law, are declared to be public roads; and the County Commissioners are given full power and authority, on the application of the citizens of their respective counties, to order the laying out of any road or roads throughout their county, when the same shall be deemed necessary for the convenience of the citizens or the traveling public, and to discontinue any public road or highway on the application of at least twelve householders in the vicinity of, and nearest to, said road, whose interest is to be affected by abolishing said road which may be found useless, burdensome and inconvenient, and to alter and change the road already, or hereafter to be, laid out and established, as often as occasion may require. The original and latter act as amended regulates the laying out of roads, working them and keeping them in repair, and provides the different road officers and prescribes their duties, and what persons shall be liable to road duty. Provisions substantially similar to those of the act of 1874 have been in force in this State since 1845, if not longer. An amendment of 1881 (chapter 3440) provides that persons living in incorporated cities and towns shall not be called upon to perform road duty outside of the limits of said town or city. It also enacts that, in addition to the road labor pro-

vided for, it shall be the duty of the County Commissioners of the several counties to levy annually a special road tax, on all the taxable property, real and personal, in their respective counties, and that such taxes shall be applied under the direction of the County Commissioners to the working and keeping in good repair of said roads and highways, for the construction of bridges; and the erection of mile and guide posts ; it being provided that if any person who has paid this road tax so desires, may work the road in his division to the extent of the tax collected at the rate of one dollar and a half per day.

The municipal corporation act of 1869, as amended by section 23, of the act of March 8, 1877, (chapter 3024) provides that the city or town council shall have power to regulate, improve, alter, extend and open streets, lanes and avenues, to cause encroachments and obstructions, decayed buildings and ruins to be removed  *  *  and to regulate and control the grading, construction and repairs of the streets, pavements and side walks ;  *  *  and to construct bridges, establish ferries and fix the rates of ferriage and tolls. Sec. 15, Act 1869. Municipal corporations are vested with power to levy and collect taxes for these and other municipal purposes.

We are not satisfied that it was the intention of the Legislature that the mere establishment of a town or city under our municipal corporation act should, of itself, suspend the power of the county road authorities over that part of an established public road which might be covered by the municipality. There is certainly nothing in the language of the act expressly declaring such an intention upon the part of the Legislature, nor is there, we think, anything from which it can properly be inferred. Though all public roads and all streets are public highways, yet neither

all public highways, nor all public roads, are streets, or city or town highways. The establishment of a city or town does not, of itself, make the part of a public road which it may happen to cover, a street or municipal highway, nor does the law require of municipal authorities that they shall declare or maintain such part of the road as a street or other municipal highway. Public roads are established by the county authorities with reference to the convenience of the people of the county or of neighborhoods therein ; streets and other municipal highways are located in obedience to the dictation of the welfare and convenience of the town or city. The road may be so located in the town that no interest of the municipality would dictate its maintenance at municipal expense ; it may touch no municipal highway of any kind. Having been established as a public road, its usefulness or necessity to the public cannot be questioned in law, so long as it continues to be such. The law provides the means for its abolishment, and it is to be presumed neither that the county authorities will fail to abolish it on proper application, wherever adjacent streets, lanes or avenues of the town supply an equivalent highway, nor that the application therefor will not be made. The establishment of the town is not evidence that the road will not be of further use to the public. The only theory upon which it can be urged that there will be no further necessity to the public for the road is that it is to be presumed the municipal authorities will maintain it as a street, alley or avenue, or that they will furnish an equally convenient highway. The theory of the law is opposed to the repeal of statutes and the deprivation of rights by implication, and a mere presumption of the kind indicated is not sufficient to satisfy this opposition. Moreover, we think that if the Legislature had contemplated a repeal on this theory, it would have made provision to secure the benefits

embodied in the presumption. To hold that the establishment of the municipality works a suspension of the powers of the county officers, is to hold, in effect, that it works abolishment of the road. If this had been intended, would not the Legislature have made provision to secure another highway for the part so abolished in the interest of one locality? Is it reasonable to suppose that they intended to thus destroy a county highway, and by implication tell the county officials to establish another, outside of the municipality, whatever the cost and inconvenience may be? This is not the way in which, after a careful consideration of our statutes, the matter strikes our minds. We see no necessity for the conflict of jurisdiction, a fear of which seems to have had such weight in some of the cases hereinafter cited. The act of 1881 relieves persons living in cities or towns from performing road labor outside of the cities or towns and thus removes any possibility of conflict from the same persons being summoned to work at the same time on streets within a city or town and on roads outside of one, even if such possibility would otherwise exist. It did not, however, previously exist, because the system of road labor was not a feature of our general city and town highway system. Streets and alleys are kept up by the levy of taxes and by labor of convicts. The exemption referred to I have always regarded as founded upon the idea of justice to the denizens of cities or towns in view of the fact that unlike persons not so resident they were taxed to support the urban highways. This was a complaint before the exemption was made. There is nothing in the provisions of the act of 1881 as to taxation for the maintenance of roads and bridges, which excludes the application to any part of a public road within a city or town, or to a bridge thereon.

In Baldwin vs. Green, 10 Mo., 411, the question was whether the act incorporating the town of Platte City divested the County Court of Platte county of jurisdiction over the part of a public road lying within the corporate limits of the town. This act gave the Board of Trustees power " to open, establish, widen, extend and repair streets, * * * and to regulate, graduate, pave and improve the streets of said town." The Supreme Court decided that the town act did not supersede the jurisdiction of the County Court over the part of the road in question.

The reasoning of the Missouri decision is, that if the jurisdiction of the County Court over the road was divested by provisions of the town act, it was only by implication and that the language of the town act did not necessarily operate a suspension of their general control over the subject of roads within the town limits, and that it should not be construed to have the latitudinous effect contended for.

The only questions presented by the record are whether the part of the road covered by the town of Palatka Heights is abolished as a public road of the county; and if not, whether the powers, duties and functions of the county road officials are suspended as to such part of the road? Our answer to these questions is in the negative. It was not the intention of the Legislature that the people should be deprived of a great public convenience, established and maintained at their expense or by their labor, without providing for the maintenance of a compensating convenience. The admission that county road officers cannot lay out new roads in cities and towns, a question not before us, does not concede that the people of a county are to be deprived of their existing roads or of the power to keep them up, by the mere establishment of a city or town.

We are aware that there are authorities, the doctrine of which may be opposed to our conclusions in this case. In Texas part of a county road was located on *an established street* in a town, whose act of incorporation gave the council power " to lay off, establish and improve the streets of the town," and it was held that the county and town officers could not at the same time exercise the authority to regulate and keep this street or road in repair without producing an irreconcilable conflict of authority in attempting to carry out any inconsistent views as to how the duty should be performed. The trouble which might arise from the same persons, living in the vicinity of the road, being called upon at the same time by the county authorities to work it, and by the town officers to work streets in the town, is also advanced as a reason for the conclusion reached. The opinion holds that the act incorporating the town was, in so far as it gave the council authority to lay out public highways within the corporation, a special law upon the same subject, co-extensive in its operation with the limits of the town, and if acted upon by the council, its effect must be to modify and repeal the general law upon the subject within such limits, or to take from the county its jurisdiction over roads and highways therein ; that until the council acts under the authority of its charter the general authority of the County Court over the subject matter continues to exist and may be exercised ; and that after the town council had acted by laying out streets, it could be compelled to keep them in repair. State vs. Jones, 18 Texas, 874. In Town of Ottawa *et al.,* vs. Walker *et al.,* 21 Ill., 605, the question was as to the authority of the *Township* of Ottawa, in its corporate capacity, to levy a tax for the construction of a bridge over Fox river within the limits of

the city of Ottawa. The act of 1851 to establish township organization, gave to the commissioners of highways the superintendence and care of roads and bridges, and required them to give directions for repairing them, and to cause bridges that had been erected over streams in their respective towns to be kept in repair. The act of 1853, incorporating the city of Ottawa, gave it power " to open, alter, abolish, * * * * establish, * * or otherwise improve or repair streets, avenues, lanes and alleys, and other public highways. To abolish, erect and keep in repair bridges." The inhabitants of the city were exempted from " working on any road beyond the limits of the city, and from paying any tax to procure laborers for working on the same." There was no highway, not within the city, crossing Fox river at or near the aqueduct. It was held, that the municipal act repealed the township law in so far as the territorial limits of the city of Ottawa were concerned, and that it was the intention of the Legislature to give the city authorities exclusive jurisdiction ; that if the township could erect this bridge, it could open other streets and grade and pave them ; that the exercise of concurrent power would lead to endless strife and confusion, which the Legislature could never have intended to produce by the provisions. In Gallaher vs. Head, decided by the Supreme Court of Iowa, in June, 1887, 24 Reporter, 330, under legislation which, so far as stated in the opinion, seems substantially like that of Texas, it was held that the county authorities could not establish a highway within the limits of an incorporated town, over land which had not been laid out into lots and blocks, and platted and recorded as such. Such power was held to be neither desirable, nor within the contemplation of the Legislature. See also Cowen's Case, 1 Overton, 311 ; Cross vs. Mayor, &c., 18 N. J., (Eq.) 305.

Neither of these cases presents the question before us of the right of a county to maintain a public road, previously established, and existing at the time of the organization of the city or town. They moreover do not stand unopposed, but, we may merely remark, the cases of Wells vs. McLaughlin, 17 Ohio, 99 ; Purcell vs. Gorham, Id., 105, and Bennington vs. Smith, 29 Vermont, 254, are opposed to them.

III. The remaining grounds of the demurrer are based upon the duty of the railroad company, under the statute, to restore the highway. Our views as to what this duty is are expressed in the case of the Palatka & Indian River Railroad Co. vs. The State, decided at the present term.

Whatever the legal duties of the railroad company may be, they do not relieve the County Commissioners or other officials from the performance of their own statutory duties in the premises. This is held by all the cases. Wellcome vs. Inhabitants of Leeds, 31 Maine, 313 ; State vs. Gorham, 37 Maine, 451 ; Currier vs. Lowell, 16 Pick., 170 ; Richards vs. County Commissioners, 120 Mass., 401 ; Eyler vs. County Commissioners Alleghany County, 49 Md., 257 ; Batty vs. Town of Duxbury, 24 Vermont, 155 ; People vs. N. Y. C. & H. R. R. Co., 74 N. Y., 302 ; People vs. D. & C. R. R. Co., 38 N. Y., 153 ; Farley vs. C. R. I. & P. R. Co., 42 Iowa, 234.

Mandamus is the proper remedy. High on Extra. Rems., sections 413, 416, and authorities cited. See also 57 Ill., 307 ; 93 Ill., 189 ; 22 Fla., 29.

The judgment of the Circuit Court is reversed, and the case remanded for further proceedings not inconsistent with this opinion.