Argued 2 July, decided 20 August, 1907.

### OLIVER v. NEWBERG.

91 Pac. 470.

MUNICIPALITY—CHANGING COUNTY ROADS TO STREETS.

1. When a city proceeds to act under a charter authorizing it to open, work and control all highways and roads within the corporate limits, and excepting that territory from the jurisdiction of the county court, and expressly ·vesting in the city control of the roads within its boundaries, it thereby accepts the relinquishment of the county court over such roads and the latter thereby become city streets and are thereafter subject to the burdens of streets: *Heiple* v. *East Portland,* 13 Or. 97, distinguished.

SAME—LEGISLATIVE INTENTION.

2. Whether a county road becomes a street when included within a city's corporate limits depends upon the intention of the legislature, as gathered from the city charter, general laws and the whole course of legislation on the subject..

STREETS—DEDICATION BY SALE OF PLATTED LOTS.

3. A sale of lots with reference to a plat showing a street is sufficient to complete a dedication of such street, subjecting it to any new servitude incident to it as a street.

VALIDITY OF STREET ASSESSMENT.

4. Under the provisions of the charter of Newberg the scheme for assessing the cost of street improvements is a pro rata one on all the lots involved according to frontage.

From Yamhill: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE EAKIN.

This is a suit brought by A. P. Oliver and others against the City of Newberg and others to enjoin the collection of an assessment of the expense of a street improvement upon abutting property. The street improved is known as "First Street," and was originally a county road, laid out by Yamhill County prior to the platting of any part of the City of Newberg and

prior to its incorporation. The town was originally incorporated in 1889, and afterward, in 1893, a new act of incorporation was passed, repealing the old one. In the re-enactment of 1893 the charter excepts out of the jurisdiction of the county court of Yamhill County all the territory within the city for road purposes or taxation therefor, and grants to the city the full control of all county roads within its jurisdiction. In the year 1905 the said city, by virtue of the terms of its charter with reference to the improvement of streets, proceeded to grade, gravel and erect a curb on either side of said First Street for a distance of nine blocks, and, after the completion of said improvements, ascertained the expense of grading and graveling to be $4,449, and of the curb 45 cents per lineal foot. The city then proceeded to assess the said expense, less the street intersections, to the abutting property along the said street *pro rata* according to the frontage. On trial of the suit, the findings were in favor of defendants, and the suit dismissed; and the plaintiffs appeal.                                   AFFIRMED.

For appellants there was a brief over the names of *Martin Luther Pipes* and *McCain & Vinton,* with oral arguments by *Mr. Pipes* and *Mr. James McCain.*

For respondents there was a brief over the names of *Richard Ward Montague,* and *Clarence Butt,* with an oral argument by *Mr. Montague.*

Opinion by MR. JUSTICE EAKIN.

The plaintiffs seek to avoid liability for said assessment upon the ground that the said alleged First Street is a county road, and abutting property is not subject to the expense of the improvements thereof under the city charter, and that, if liable, the city should have assessed to each lot only the expense of the improvement of the half street abutting thereon. The issues as to the manner in which improvements were made and the character of the material used thereon are waived by the plaintiffs. Questions for consideration therefore are: Is the so-called First Street a street within the meaning of the char-

ter authorizing such improvements? And, if so, was the manner of the assessment of the expense of the improvement against the adjacent property within the authorization of the charter?

1. By the charter of 1893 the City of Newberg was created, the boundaries of which included the street in question; and by Section 139 it is provided:

"The City of Newberg, as created by this act, shall have full power to lay out, open, work, change and control all the highways and roads within the corporate limits thereof, and the inhabitants of said city within said limits, and all property therein shall be exempt from the payment of road taxes of any and every kind to the County of Yamhill. * * For the purpose mentioned in this section, the territory within the limits of the City of Newberg is excepted out of the jurisdiction of the county court of Yamhill County, Oregon, and full control of all roads and highways, or parts thereof, within the corporate limits of said city is hereby vested in the City of Newberg": Laws 1893, pp. 282, 316.

When the city proceeded to act under the charter of its creation, it thereby accepted the relinquishment and grant of all county roads within its territory, and *ipso facto* they became streets. In *Heiple* v. *East Portland,* 13 Or. 97 (8 Pac. 907), cited by plaintiffs' counsel as holding contrary to this view, it is found that the language of the charter is very different from the one before us. The East Portland charter amendment of 1872 (Laws 1872, p. 181) only excepts the territory out of the jurisdiction of the county court and authorizes the city to collect road taxes for repairs of streets. It also appears that the act of 1872 was an amendment or addition to the East Portland charter relating to county roads, and not mentioned in the original charter. Mr. Justice LORD, in holding that the act did not make it a street, says: "The case is different where, by the act, the limits of the city are extended, and new territory is acquired and subjected to the laws and jurisdiction of the municipality." Also, in the Eugene charter (Laws 1889, pp. 273, 296), Sec. 98 gives authority to the city, when it is deemed expedient, to establish streets upon county roads within its limits; and when so located they shall become streets. In *Huddle-*

*ston* v. *Eugene,* 34 Or. 343 (55 Pac. 868 : 43 L. R. A. 444), it is held that no new condemnation was required and that the ordinance for its improvement was an acceptance of the grant; and in the opinion in that case, Mr. Justice MOORE cites with approval *McGrew* v. *Stewart,* 51 Kan. 185 (32 Pac. 896), in which it is held that, where a city extends its boundary over new territory, the highway therein was impressed with the character of a street, and subject to exclusive control by the city and to the liabilities and servitudes of all other streets within the city. To the same effect is Elliott, Roads & Streets (1 ed.), p. 313; same work (2 ed.), § 450.

2. Whether a county road becomes a street, when included within the corporate limits of a city, depends upon the intention of the legislature, as gathered from the city charter, general laws and the whole course of legislation on the subject: 2 Dillon, Munic. Corp. § 676 *et seq.; State ex rel* v. *Com'rs Putnam County,* 23 Fla. 632 (3 South. 164). Where the legislature has expressly conferred upon the corporation control of the county roads within its boundaries, and excepted the territory within it from county control for road purposes, there is no question but that such highways become streets, and subject to all the burdens of streets. This is definitely stated in 27 Am. & Eng. Enc. Law (2 ed.), 104, and recognized in Elliott, Roads & Streets (2 ed.), § 116. In *Railroad Co.* v. *Defiance,* 52 Ohio St. 262, 299 (40 N. E. 89, 97), the court say : "While counsel for the plaintiff concede that the parts of the county roads so brought within the defendant's corporate limits became highways of that municipality, they contend it acquired control of them, in the language of the petition, 'for police purposes only,' by which we understand counsel to mean that the defendant was without authority to improve them at all, or, if improved, the expenses should be paid by tax collected from the property of the whole county. This position is, we think, untenable. The highways so brought within the corporate limits of the defendant were removed from the control which the county commissioners theretofore had over them, and became subject to the control, supervision and care of the municipal

authorities, like other streets and highways of the corporation. By express statutory provision the council is given 'the care, supervision and control of all public highways, streets, avenues, alleys, sidewalks, public grounds and bridges within the corporation,' and is charged with the duty of causing 'the same to be kept open and in repair, and free from nuisance': Section 2640, Rev. St. The duty thus devolved upon the council is attended with the power to do whatever may be necessary in the proper and lawful performance of the duty, including the power to improve such ways, or parts thereof, in any lawful manner, when and as the public convenience may demand. Grading a street, and changing its grade, when necessary for its convenient use by the public, are lawful modes of improving the street, and keeping the same open and in repair." To the same effect are *City of Louisville* v. *Brewer's Adm'r.* 24 Ky. Law Rep. 1671 (72 S. W. 9) ; *Almand* v. *Atlanta Con. St. Ry. Co.* 108 Ga. 417 (34 S. E. 6) ; *Cascade County* v. *City of Great Falls,* 18 Mont. 537 (46 Pac. 437) ; *State* v. *Jones,* 18 Tex. 874; *Town of Ottawa* v. *Walker,* 21 Ill. 605 (71 Am. Dec. 121). By the terms of the charter above quoted, county roads within the corporate limits of the City of Newberg, existing at the time of the act of incorporation, thereby became streets.

3. The plats of the Town of Newberg and additions thereto include the ground traversed by the county road now claimed as First Street, which is marked thereon as "First Street"; and although prior thereto there was an easement over the same in the public for a roadway, yet the fee remained in the original owner or his grantee. In most of these plats the dedicators use the language, "We hereby dedicate all our interests in the streets and alleys as shown by said plat, field notes and survey," or equivalent language; and even where such words of dedication are omitted, and the street is shown by the plat, the sale of lots by the proprietor with reference to such plat is sufficient to complete such dedication (*Spencer* v. *Peterson,* 41 Or. 257: 68 Pac. 519, 1108; *Christian* v. *Eugene,* 49 Or. 170: 89 Pac. 419) ; and, such being the case, the dedication subjects the street to any new servitude incident to it as a street. This is

also recognized in the case of *Heiple* v. *East Portland,* 13 Or. 97 (8 Pac. 912), where Mr. Justice LORD says: "The next defense is estoppel by dedication, in this: that the plaintiff had sold lots abutting upon the disputed tracts according to a recorded plat, recognizing the same as a street. As stated, this certainly would be a good defense." But in that case the disputed tract was expressly reserved from the dedication. Some of these additions were laid out and the plats executed prior to the incorporation of the town in 1889; but by the act of incorporation they became subject to the control of the municipality and to the liabilities and servitudes incident to the streets (*McGrew* v. *Stewart,* 51 Kan. 185: 32 Pac. 896), and upon either ground First Street is a street subject to all the burdens incident to streets within the municipality.

4. The validity of the method adopted by the city in apportioning the expense of the improvement is questioned by plaintiffs. The expense of the curb and graveling was uniform as to every lot, and the only fluctuation in expense is in the grading, which cost $713.50 for the whole distance of 2,402 feet— less than 15 cents per front foot. If the expense of grading the half street in front of some lots was only one-fourth as much as that of grading in front of others, as testified by one witness, the cost for grading the lots incurring the least expense would be seven and a half cents per front foot, and according to plaintiffs' theory the excess of their burden would not exceed $3.50 upon a 50-foot lot. Section 82 of the charter of 1893 (Laws 1893, pp. 282, 305), is relied upon by plaintiffs as supporting their claim that each lot is liable for the improvement of only the half of the street in front of it or abutting upon it. The only purpose of this section is evidently to declare what proportion of a block shall be liable for the improvement of a street in front of it, viz.: In extending the liability to the middle of the block, and considering the charter as a whole, this section can only be construed to mean that all the portion of the block extending back to the center line thereof shall be liable for the full amount assessable to the half street in front of it.

We arrive at this conclusion for the reason that Section 64 (Laws 1893, pp. 282, 301), provides that the council shall "assess upon each lot or part thereof liable therefor its proportionate share of the cost" of the improvement. Section 65 (Laws 1893, pp. 282, 301) also provides that the total cost of the improvement shall be assessed proportionately to the adjacent lots; and Section 66 (Laws 1893, pp. 282, 301) provides that the council "shall then proceed to ascertain and determine the proportionate share of such cost assessable to each tract of land, and to assess by resolution each lot or parcel of ground with its proportionate share of such cost, which determination and assessment shall be final and conclusive."

Section 110 (Laws 1893, pp. 282, 312) still further strengthens this view, as it provides: "In assessing the cost of any street improvement * * upon the abutting property holders, the council shall assess one-half of such cost upon the property on each side of such street * * to a line in such adjacent or abutting blocks parallel with such street or alley so improved, and one-half the entire distance across such block therefrom; provided, that all assessment for the cost of building or repairing any sidewalk or pavement shall be upon the property immediately adjacent to or abutting thereon, and for the full price of constructing or repairing such sidewalk or pavement." The exception contained in that section clearly shows that the legislature meant that the expense of the whole improvement is to be apportioned to the adjacent property, except sidewalks and pavement, which are to be built by the owner in front of his own property, and the provision that one-half of the improvement shall be assessed to each side of the street shows that the measure is not to each lot the expense of the improvement of the half street abutting such lot. The charter, taken as a whole, clearly contemplates that the expense of the improvement such as this shall be apportioned to the abutting property on each side of the street back to the center line of the block proportionately, and even with that limitation it leaves considerable discretion to the council as to what shall constitute such proportionate apportionment; and we find that there was no error in appor-

tioning the total expense of the improvement *pro rata* according to the frontage on the street.

The decree of the lower court is affirmed.        AFFIRMED.